IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLEE PATRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CV-02-TMP-0552-S |
| ) | |
| WAL-MART, INC., ) | |
| ) | |
| Defendant. ) | |

**ENTERED**
**OCT 07 2003**

## MEMORANDUM OPINION

This action is before the court on defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") motion for summary judgment, filed July 25, 2003. The motion is supported by a brief and evidentiary submissions. Plaintiff Kimberlee Patrick responded to the motion by filing an opposition on August 25, 2003. All parties have consented to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## UNDISPUTED FACTS

Viewing the evidence in the light most favorable to the nonmoving party, as this court must, the facts pertinent to defendant's motion for summary judgment appear to be as follows. Plaintiff Kimberlee Patrick was shopping at the Center Point Wal-

1

31

Mart on October 24, 2000. During the course of her shopping that day, she picked up some reading glasses. Patrick stated that she removed the tag from the glasses in order to determine whether they fit properly. Then she held them in her hand as she continued to shop, trying them on occasionally to make sure that she could read various sizes of print. Patrick said that when she checked out, she accidentally forgot to pay for the glasses. Before Patrick exited the store, Jennifer Thomason and Ron Richardson, two Wal-Mart loss prevention associates, stopped her and asked her to accompany them to the back of the store. Once they reached the office in the back of the store, Patrick attempted to explain that she had not intended to steal the glasses. The loss prevention associates presented her with a piece of paper entitled "Notification of Restriction from Property" that read as follows:

> Pursuant to law, Wal-Mart Stores, Inc. chooses to exercise its right to restrict entrance to individuals who have conducted themselves in a manner which is not acceptable to the community, including, but not limited to shoplifting or destruction of property. It is deemed that the undersigned apprehended subject poses a threat to the future security of Wal-Mart facilities and properties, and therefore, is no longer welcome on Wal-Mart property, within its stores, or on any property under its immediate control.
>
> The undersigned apprehended subject is now on notice that should he/she choose to ignore this revocation of the invitation and enter onto any Wal-Mart property, he/she places himself/herself in the position to be charged with Criminal Trespass pursuant to 13A-7-2 of the Alabama Code.

> It is not necessary that the undersigned apprehended subject be caught in an illegal act, including, but not limited to, shoplifting or destroying property; the mere presence of such individual on the property is sufficient.

The loss prevention associates paraphrased the contents of the paper, but did not read it *verbatim*, and asked Patrick to sign it. The paper was on the desk in front of Patrick, but she did not read it herself. She said that the associates told her the paper explained that she was trying to steal and that she could not enter that particular Wal-Mart store (in Center Point) for a certain period of time. Patrick said the loss prevention associates told her that if she did not sign the paper, she would go to jail. She refused to sign the paper. Pursuant to Wal-Mart policy, the loss prevention associates did not give Patrick a copy of the form. The loss prevention associates called the police. Patrick was arrested and charged with theft of property in the third degree.[1]

On November 16, 2000, sometime before 4:00 p.m., Patrick entered the Homewood Wal-Mart store. While she was shopping,

---

[1] Patrick's case was heard in Birmingham Municipal Court. Her case was continued twice at the request of her attorney. On April 1, 2001, the municipal court agreed to suspend the case for six months with an agreement between the city prosecutor and Patrick's defense attorney that the case would be *nol prossed* if Patrick met the following three conditions: 1) stay out of trouble, 2) stay out of all Wal-Mart stores, and 3) pay court costs of $106 and come back for a review in six months. Patrick said that she complied with these requests and appeared for her six-month review on October 1, 2001.

3

Patrick picked up a Christmas ornament to look at it. She decided not to purchase the ornament and she placed it back on the rack. She purchased poster board and pens and a few other small items. After Patrick checked out, she was stopped by Thomason and Lance Justice, another loss prevention associate. Thomason told Patrick that she was not supposed to be on the property and that she would have to come to the security office. Patrick explained to Thomason that she thought she was only supposed to stay out of the Center Point store and that she had not done anything wrong. Patrick said that Thomason told her she did not need a reason to stop her and that she could stop and search "anyone she wanted to without cause." (Patrick Depo., at 187).

Patrick walked to the security office with Thomason and Justice. Patrick said that Thomason then looked at Patrick's receipt and searched her shopping bag and her change purse, and instructed Patrick to empty her pockets. Wal-Mart policy prohibits "a search of any nature of a person or their property by an associate." (Thomason Depo. at 45-46.) Thomason asked Patrick if she remembered signing a piece of paper during the Center Point incident that banned her from all Wal-Mart property. Patrick replied that she had not signed the paper and that she thought she was only banned from the Center Point store. Thomason told Patrick that she would have to sign the paper that day or go to jail. The police were then called, and an officer arrived about 15 minutes

4

later. Before the police arrived, Patrick said that Thomason, Justice, and another security guard were huddled together in the office discussing something that she could not hear, although she believed they were laughing at her. Patrick said she thought about 30 minutes elapsed between the time she was taken back to the office and the time the police arrived. When the police officer arrived, Thomason explained to him what had happened and told him that Patrick was trespassing.

The officer questioned Patrick, and she told him that she thought she was only banned from the Center Point Wal-Mart. He asked her if she had ever been a mental patient, what medications she was taking, and whether she had physical problems. Patrick said that she told them she had a brain tumor, and they laughed at her. Patrick said that the police officer called and found out her driver's license was invalid, and he told her she could sit there and wait for someone to come get her. The officer then told her she should sign the paper the loss prevention associates had given her or he would take her to jail. Patrick said she signed the paper "even though she knew it was a lie" because she felt that going to jail would be dangerous for her because of her health problems. Patrick has a history of anxiety and depression, and she has a brain tumor and heart problems, including mitral valve prolapse. A few minutes after she signed the form, Patrick said the police officer indicated to her that she could leave. She

5

estimated that she was in the security office for a total of about an hour. Patrick was not charged with trespassing or shoplifting on this occasion.

Patrick claims that as a result of the November 16, 2000, incident she has suffered great mental anguish, increased anxiety, increased depression, and increased blood pressure. She also claims that her mitral valve prolapse symptoms have gotten worse and that she has had headaches and difficulty sleeping. Despite these problems, Patrick has not told any of her physicians, including her psychiatrist, about the incident at Wal-Mart because she was embarrassed. She has not had to take any new medications as a result of the incident. However, she takes Klonopin, an anti-anxiety drug, as needed and stated that she needed more right after the incident. Plaintiff commenced this action on January 10, 2002, seeking compensatory and punitive damages on her tort claims of false arrest, false imprisonment, invasion of privacy, outrage, and fraudulent misrepresentation arising out of the incident on November 16, 2000.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). When the nonmoving party does not respond, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

7

The nonmoving party may not merely rest on her pleadings. <u>Celotex</u>, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id</u>. at 322.

After the plaintiff has had the opportunity to respond to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u>. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id</u>. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id</u>. at 251-52; <u>see also</u> <u>Bill Johnson's Restaurants, Inc. v. N.L.R.B.</u>, 461 U.S. 731, 745 n.11 (1983).

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### A.  Plaintiff's False Arrest/False Imprisonment Claim

In Alabama, "[f]alse imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170 (1975). To constitute false imprisonment, some direct restraint must be present, although there does not have to be physical confinement in a jail or prison. Big B, Inc. v. Cottingham, 634 So. 2d 999, 1001 (Ala. 1993). Actual force or an express or implied threat of force is sufficient to constitute false imprisonment if the force or threat causes a person to be "deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go . . ." Id.

In Big B, Inc. v. Cottingham, 634 So. 2d 999 (Ala. 1993), the court held that the plaintiff's claim was sufficient to go to the jury when the Big B employee stood between the plaintiff and the door and threatened to have her arrested for shoplifting if she did not divulge the name of her acquaintance who had been seen shoplifting. Id. at 1002.

There is a statutory defense to a false-imprisonment or false-arrest claim when a merchant, merchant's employee, or peace officer has probable cause to detain someone in a store. Ala. Code § 15-10-14 (1975). The statute provides in pertinent part:

9

> (a) A peace officer, a merchant or a merchant's employee who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person and that he can recover them by taking the person into custody may, for the purpose of attempting to effect such recovery, take the person into custody and detain him in a reasonable manner for a reasonable length of time. Such taking into custody and detention by a peace officer, merchant or merchant's employee shall not render such police officer, merchant or merchant's employee criminally or civilly liable for false arrest, false imprisonment or unlawful detention.

Ala. Code § 15-10-14 (1975).

The Alabama Supreme Court has defined probable cause as "'a reasonable ground for suspicions, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.'" Fina Oil and Chemical Co. v. Hood, 621 So. 2d 253, 257 (Ala. 1993) (quoting Parisian Co. v. Williams, 83 So. 122, 127 (Ala. 1919)). Probable cause does not depend upon whether the person being detained was actually guilty of an offense but on whether the merchant's employee "acted in good faith on the appearance of things." Eidson v. Olin Corp, 527 So. 2d 1283, 1285 (Ala. 1988) (quoting Birwood Paper Co. v. Damsky, 229 So. 2d 514, 521 (Ala. 1969)).

A case involving trespass, however, appears to be subject to different rules under Alabama law. The Alabama Supreme Court has stated that while a private citizen may make an arrest for a

10

trespass on his property, if the person who was detained did not commit the trespass, the detainee may bring an action for false imprisonment, and "the good faith of the person making the arrest or the existence of probable cause" does not excuse the false imprisonment. Yancey v. Farmer, 472 So. 2d 990, 991 (Ala. 1985). Rather, the good faith or probable cause issues may be relevant to a jury's determination as to whether the plaintiff is entitled to punitive damages. Id. The Alabama Supreme Court has further opined that probable cause is typically a question of fact for the jury in false-imprisonment and false-arrest cases. Frison v. Delchamps Store No. 11, 507 So. 2d 478, 480 (Ala. 1987).

In the instant case, a question of fact likely exists as to whether the plaintiff has proven a false-imprisonment claim. If, like in Big B v. Cottingham, the defendant's employees threatened the plaintiff with being arrested if she did not comply with their directives, that might constitute an implied threat of force that deprived plaintiff of her liberty. Although the Wal-Mart employees did not physically restrain Patrick, the fact that she was being detained in the security office may have constituted an implied threat of force that would be sufficient to create a question of material fact on that element of her false imprisonment claim.[2]

---

[2]   Thomason, one of the loss prevention associates, testified that Patrick was free to leave at any time during her detention in the security office. However, the evidence indicates that Patrick did not know she was free to leave, and did not ask to leave the security office or the store.

11

Although the parties discussed in depositions Patrick's conduct in holding the Christmas ornament at the Homewood Wal-Mart store, the defendant does not argue that Patrick was detained on suspicion of shoplifting. Rather, Wal-Mart's position, as set forth in its belated brief in support of its motion for summary judgment, is that Patrick was detained because of the alleged trespass. Accordingly, the statute permitting detention of suspected shoplifters does not protect Wal-Mart in this case. Plaintiff has offered evidence that she did not understand that she had been told not to enter any Wal-Mart. She testified that she believed she had been banned only from the Center Point store and that she was not shown, did not read, and did not sign the document that stated otherwise. Accordingly, plaintiff has offered evidence that she was not guilty of trespass, which requires that plaintiff "knowingly" enter or remain on premises "unlawfully." Ala. Code § 13A-7-4.

Questions of fact exist as to whether there was an implied threat of force and as to whether Wal-Mart had probable cause to detain Patrick. As a result, the defendant's motion for summary judgment regarding plaintiff's false-imprisonment claim is due to be denied.

**B.   Plaintiff's Invasion of Privacy Claim**

Alabama recognizes the tort of invasion of privacy in the form

12

of four limited and distinct wrongs: (1) intruding into a person's physical solitude or seclusion; (2) giving publicity to private information about a person that violates ordinary decency; (3) putting a person in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of a person's personality for a commercial use. Johnston v. Fuller, 706 So. 2d 700, 701 (Ala. 1997). In regard to the first wrong, intruding into a person's solitude or seclusion, Alabama has adopted the Restatement definition: "One who intentionally intrudes physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977). Communication or publication of private information is not necessary to establish a claim for invasion of privacy in this situation. Phillips v. Smalley Maintenance Services, Inc., 435 So. 2d 705, 709 (Ala. 1983). In addition, the intrusion upon one's "solitude or seclusion" does not have to be a physical intrusion; it can also be an intrusion into one's emotional solitude. Id. at 711.

Wal-Mart claims that it had the right to conduct a reasonable investigation into Patrick's appearance at the store because she had previously been charged with shoplifting and had been banned from Wal-Mart's premises. Wal-Mart claims that Thomason, the loss

13

prevention associate who searched Patrick, conducted the search because she wanted to ensure that Patrick did not have anything in her possession that would endanger any Wal-Mart employees. Wal-Mart further argues that Patrick consented to the search in that she did not voice objection to turning over her shopping bag and change purse or emptying her pockets.

Plaintiff maintains that the search was conducted in bad faith because the Wal-Mart manual states that no circumstances warrant "a search of any nature of a person or their property by an associate." In addition, the plaintiff claims that the search was not warranted because the search was unrelated to explaining to Patrick that she was banned from all Wal-Mart stores.

In the instant case, there exists a question of material fact regarding plaintiff's claim of invasion of privacy. While the fact that Thomason was acting in a manner contrary to Wal-Mart policy does not automatically mean the search was conducted in bad faith and that Patrick's privacy was invaded, the intrusion in this case was intentional and might amount to an intrusion into Patrick's private affairs that would "be highly offensive to a reasonable person." There is a question of fact as to whether the search of a shopping bag, a change purse, and pockets under these circumstances would be highly offensive to a reasonable person. As a result, the defendant's motion for summary judgment regarding plaintiff's invasion of privacy claim is due to be denied.

14

C.     **Plaintiff's Outrage Claim**

Alabama has adopted the Restatement (Second) of Torts definition of the tort of outrage found in § 46: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." American Road Service Co. v. Inmon, 394 So. 2d 361, 365 (Ala. 1980). This tort does not recognize recovery for "'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id. at 364-65 (quoting Restatement (Second) of Torts § 46 cmt. d (1948)). The conduct required to constitute this tort must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. at 365 (citing Restatement (Second) of Torts § 46 cmt. d (1948)). The elements of the tort of outrage are as follows: "(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe." Perkins v. Dean, 570 So. 2d 1217, 1219 (Ala. 1990).

The Alabama Supreme Court has "consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances." Thomas v. BSE Industrial

Contractors, Inc., 624 So. 2d 1041, 1044 (Ala. 1993). Thus, the court has held that there was not a jury question in the majority of outrage cases. Id. In fact, since Alabama decided to recognize the tort of outrage, only three categories of cases have been found to present a jury question: (1) cases that have to do with wrongful conduct in family burials, (2) cases where insurance agents employed heavy-handed, barbaric means to coerce an insured into settling an insurance claim, and (3) cases involving egregious sexual harassment. Id.

In the instant case, the defendant's conduct does not fall into one of the three recognized categories of cases that present a jury question on the tort of outrage. The defendant's conduct in this case certainly does not rise to the level of being "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." The plaintiff may have been embarrassed and experienced added stress as a result of this incident. However, her stress and other symptoms were not so severe that she felt the need to report them to a physician. In addition, the defendant's detaining and searching the plaintiff in the store after plaintiff had already been arrested for shoplifting could not be considered so extreme and outrageous that it constitutes the tort of outrage. While Patrick may have felt threatened and been afraid that she would be arrested, a "'mere .

16

. . threat'" does not constitute the tort of outrage. As a result, the defendant's motion for summary judgment regarding plaintiff's tort of outrage claim is due to be granted.

### D.  Plaintiff's Fraudulent Representation Claim

To establish a *prima facie* case of fraudulent misrepresentation, a plaintiff must show that:  (1) the representation was false, (2) the representation concerned a material fact, (3) the plaintiff relied on the false representation, and (4) actual injury resulted from the reliance.   Ala. Code § 6-5-101 (1975); Boswell v. Liberty Nat'l Life Ins. Co., 643 So. 2d 580, 581 (Ala. 1994).

The plaintiff claims that Wal-Mart fraudulently represented to her that it would have her arrested for trespassing.  The plaintiff further contends that she relied on Wal-Mart's representation because she signed the Notification of Restriction from Property in order to not be arrested.  She claims that she suffered severe mental anguish as a result of the defendant's misrepresentation.

In this case, the plaintiff has failed to make a prima facie showing that the representation at issue was false.  Furthermore, even if false, the representation relates to a future event - an eventual arrest - and is not a present existing fact as is required to support a fraud claim.  A misrepresentation in the form of a promise or a misrepresentation relating to a future event is actionable under Alabama law as promissory fraud, but requires

17

proof that, at the time the misrepresentation is made, the defendant had an intent not to perform the promised act. Ala. Code § 6-5-104(a)(4); see, e.g., Intercorp. Inc. v. Pennzoil Co., 877 F.2d 1524 (11th Cir. 1989).

Plaintiff has failed to show that Wal-Mart's representation - that it would have her arrested if she did not sign a document acknowledging that she was banned from all Wal-Mart properties - was false. To the contrary, Wal-Mart's actions in summoning police indicate that Wal-Mart intended to press charges against the plaintiff. Furthermore, even if the statement were false, the representation related to a future event or promise. Plaintiff has not shown that Wal-Mart intended, at the time it made the threat or promise, to fail to honor the promise. Accordingly, the facts at bar do not constitute a fraudulent misrepresentation under Alabama law and the motion for summary judgment as to plaintiff's fraud claim is due to be granted.

## CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented by both parties in support of and in opposition to the motion for summary judgment, this court determines that defendant's motion for summary judgment on plaintiff's outrage and fraudulent representation claims is due to be granted, and defendant's motion for summary judgment on plaintiff's false-

imprisonment and invasion-of-privacy claims is due to be denied. A separate order will be entered in accordance with the findings set forth herein.

Dated this 7th day of October, 2003.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE